UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH R. WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-1089-SEB-TAB |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY**

Kenneth R. Washington ("Washington") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 301. *et seq.* (Title II); § 1381 *et seq.* (Title XVI). For the reasons explained in this Entry, the Commissioner's decision must be affirmed.

**Evidence**

Washington filed his application for DIB on April 5, 2004, and SSI on January 25, 2005 where he claimed a disability onset date of November 1, 2003. The claims were denied initially on November 18, 2004, and upon reconsideration on May 3, 2005. Washington filed a timely request for a hearing and one was held on February 13, 2008,

before Administrative Law Judge Andrew F. Tranovich ("ALJ").  At the hearing, Washington was represented by attorney Charles J. Myers.  Washington introduced evidence and testified; in addition, his sister Emma L. Glenn and his brother-in-law Bishop Charles Glenn testified at the hearing.  Also testifying were Dr. Lee Fischer, a board certified family practitioner, and Stephanie R. Archer, a certified rehabilitation counselor.

On March 19, 2008, the ALJ rendered a decision denying Washington's claim.  Washington then filed a timely Request for Review with the Appeals Council.  On June 20, 2008, the Appeals Council denied Washington's request for review.  This denial of review made the ALJ's decision final.  See Getch v. Astrue, 539 F.2d 473, 480 (7th Cir. 2008).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... in [a] district court of the United States."

The ALJ's decision contained the following detailed findings: (1) Washington had not engaged in substantial gainful activity since November 1, 2003; (2) Washington had severe impairments including: left shoulder injury, degenerative joint disease of the left hip, old bullet wound to the left hip, pain in the right and left groin, migraine headaches, depression, personality disorder, and substance abuse; (3) None of these impairments, either individually or combined, met the requirements of a "disabling impairment" under

20 C.F.R. part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)); (4) Washington retained the residual functional capacity to perform certain categories of light work; (5) Washington could perform his last relevant work as a machine packer as he actually performed the job and as a mail clerk as that job is performed generally in the economy; (6) In the alternative, there are jobs that exist in significant numbers in the national economy that Washington can perform. 20 C.F.R. § 404.1560(c).

      The ALJ concluded that Washington was not disabled and not entitled to benefits.

## Discussion

**I**. **Applicable Law**

      To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

      A five-step inquiry outlined in Social Security regulations is used to determine

disability status. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

Id.  The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner.  Id. at 352.  "An affirmative answer leads either to the next step or, in steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled."  Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

After step three, the ALJ must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520.  This determination has three components: physical abilities, mental abilities, and other impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In order to place an individual at a particular residual functional capacity level, the individual must be able to perform the full range of work in that category on a daily basis.  Frey v. Bowen, 816 F.2d 508 (10th Cir. 1987).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and is otherwise free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been

4

defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)).

**II. Analysis**

The ALJ determined that Washington retained the functional capacity to perform work at the light functional level.[1]  With this functional capacity the ALJ found that Washington was able to perform his past job as a machine packer as he actually performed it and a job as a mail clerk as it is performed in the national economy.  (R. at 26).  In addition, the ALJ found, using the grids (20 C.F.R. Part 404, Subpart P, Appendix 2) that jobs exist in significant numbers in the national economy for Washington to perform.  (R. at 27).  Washington argues that the ALJ reached improper medical conclusions regarding his depression and that the ALJ's credibility assessments regarding his headaches were not supported by substantial evidence.

---

[1] Specifically, the ALJ made the following finding:
> I find that the claimant retains the residual functional capacity to lift, carry, push and pull up to twenty pounds occasionally, and ten pounds frequently, and to sit and stand-walk in combination each for up to six hours total in an eight-hour work day.  He can frequently balance and stoop, and can occasionally kneel, crouch, crawl, and climb ramps and stairs.  He would be precluded from climbing ladders, ropes, or scaffolds.  He further would be precluded from reaching or lifting with the left upper extremity above shoulder level.  In addition, he could sustain work that involved the performance of no more than simple, repetitive tasks, and required only superficial contact with co-workers and the general public.

**1. The GAF Score**

Washington argues that he should have been granted benefits based on his showing that he suffered from severe depression and a personality disorder with paranoid and explosive features. His argument centers around the diagnosis of Dr. Gover. Dr. Gover found that Washington had a GAF (Global Assessment of Functioning) score of 50. (R. at 295) On the GAF, a clinician rates an individual's ability to function on a scale of 1 (the lowest functioning) to 100 (superior functioning).[2] An individual with a GAF score between 41 and 50 has "serious symptoms...or any serious impairment in social, occupational, or school functioning."[3] A GAF score of 51 to 60 indicates only "moderate difficulty in functioning."[4] Washington argues that a GAF score of 50 shows that he is disabled and entitled to benefits.

While a GAF score may be helpful in determining an individual's residual functional capacity, it is not conclusive. See, e.g., Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003); Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002). Courts have found that a GAF score of 35 is strong evidence of an inability to work. Haag v. Barnhart, 333 F. Supp. 2d 1210, 1214 (N.D. Ala. 2004). However, the Sixth Circuit has held that a GAF score in the high 40s to mid 50s does not preclude an

---

[2] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Fourth Edition Text Revision 2000). (DSM - IV)

[3] Id.

[4] Id.

individual from "having the mental capacity to hold at least some jobs in the national economy." Smith v. Commissioner of Social Sec., 482 F.3d 873, 877 (6th Cir. 2007). Similarly, the Seventh Circuit upheld an ALJ's finding of no disability when the individual had a GAF score of 40. Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003).

In the present case, the ALJ properly analyzed and discussed all of Washington's mental impairments. On March 11, 2005, Washington was examined by Dr. Gover, a psychologist. After the examination Dr. Gover assigned Washington a GAF score of 50. (R. at 295). However, the ALJ noted that Dr. Gover's findings did not seem commensurate with the claimant's self-reported improved symptoms of depression and the claimant's allegations of severe drowsiness when he admitted that he was not taking any medication for pain. (R. at 23). The ALJ also noted that Dr. Gover found that Washington had never undergone any inpatient psychiatric treatment, was not on any psychotropic medication, and had been seen on an outpatient basis on only a single occasion. (R. at 22). Similarly, Washington's claims to Dr. Gover of extremely aggressive behavior towards superior officers while in the military were not reflected in his service histories provided to his Veterans Administration doctors. (R. at 23). The ALJ further observed that Washington was not totally isolated and he maintained constant contact with his two sisters and attended church weekly. (R. at 24). From this evidence, the ALJ properly determined that Washington's claims were not entirely credible and were not suggestive of a disabling psychological impairment.

The ALJ also found that Washington's claims were contradicted by additional evidence. The ALJ noted that in a consultive exam performed in September 2004, Washington stated that he was able to "carry out extensive duties such as organization, planning, and shopping for necessities, as well as other necessary activities of daily living, such as preparing meals and cleaning." (R. at 23, 332). Similarly, he often "engaged in hobbies that included watching sports and writing poetry." (R. at 23, 332). Washington also had the ability to sustain daily activities "such as routine household chores, as well as such leisure pursuits as watching television, reading newspapers and the Bible, and reading and writing poetry." (R. at 24). Finally, the ALJ afforded an earlier medical assessment of Dr. Veach, where Washington received a GAF score of 55, greater weight than Dr. Gover's assessment due to the fact that Dr. Gover reported that Washington exhibited signs of symptom exaggeration. (R. at 24, 333).

The ALJ found that Washington's mental diagnoses were not suggestive of a disabling psychiatric impairment and that he could sustain work that "involved the performance of no more than simple, repetitive tasks, and required only superficial contact with co-workers and the general public." (R. at 22, 25). A GAF score of 50, by itself, is not enough to conclusively find an individual disabled. The ALJ correctly weighed the medical findings, Washington's statements, and other evidence when making a determination. This determination was supported by substantial evidence.

**2. The Migraine Headaches**

Washington argues that the ALJ did not consider all of the relevant evidence regarding his severe migraine headaches in making a credibility determination.  When making a credibility determination an ALJ must follow Social Security Regulation (SSR) 96-7p.  This is a two step process that requires the ALJ to first consider whether there is an underlying medical impairment.  Next, the ALJ must:

> ...evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record..... These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.
> SSR 96-7p.

"In other words, the ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations."  Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009).  However, because the ALJ is the one actually observing the witnesses and listening to testimony, courts should not disturb an ALJ's "credibility determinations as long as they

find some support in the record." Dixon v. Massanari, 270 F.3d 1171, 1178 -1179 (7th Cir. 2001).

Here, the ALJ properly evaluated and examined all of the evidence in determining Washington's credibility concerning his migraine headaches. Washington claimed debilitating headaches at least six times per month, some lasting up to three days at a time. (R. at 20). He claimed that this would cause him to have sensitivity to light, sound, and odors. (R. at 20, 360). Washington further claimed that during these headaches, he could not perform any significant activities and would have to lie down in a dark room and try to sleep it off. (R. at 20, 92).

Washington's claims were analyzed by the ALJ in comparison to other additional findings and evidence. The ALJ considered the findings of an examining neurologist, Dr. Zdobylak, who determined that Washington's headaches were most likely not caused by hypertension and instead were the result of a motor vehicle accident that Washington said occurred in 1983. (R. at 367). However, the ALJ noted that there was no documentation of the alleged motor vehicle accident, which supposedly happened while Washington was in the Marine Corps. (R. at 21, 360). Similarly, Washington did not note this accident during his Veterans Administration consultations with Dr. Legrand, an orthopedist, or Dr. Muneer, a physician. (R. at 21, 209, 361). Washington also specifically denied any headaches in April of 2003. (R. at 21, 230). Additionally, Washington did not take any medications for his headaches other than occasional Tylenol products. (R. at 21, 360). Finally, the ALJ observed that Washington was able to have numerous jobs since the

alleged 1983 accident and that it was unlikely that the various supervisors at these jobs had allowed him to take numerous breaks and lie down on the job when a migraine came on. (R. at 21).

The ALJ determined that the record documents an "advanced level of function and daily activities significantly greater than would reasonablely be expected from an individual experiencing the debilitating residuals that the claimant alleged." (R. at 21). The ALJ determined the residual functional capacity of Washington after consulting the entire record. The credibility of Washington's statements was determined based on the ALJ's consideration of the entire record. Weight was given to the opinions of Dr. Fischer, a board certified family medicine practitioner, who determined that Washington could perform at the light exertional level. (R. at 25). The mental limitations described in the residual functional capacity were those of Theresa A. Veach, Ph. D. (R. at 25). The ALJ found that these opinions were well supported by the medical record. (R. at 25). The residual functional capacity determination made by the ALJ is supported by substantial evidence.

Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. Wood v. Thompson, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it constitutes substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Carradine v. Barnhart, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the fact that Congress has designated the

Commissioner, not the courts, to make disability determinations. A court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ's findings regarding Washington's mental impairments and migraine headaches are supported by substantial evidence. In addition, the ALJ's findings regarding Washington's residual functional capacity and ability to perform light work after taking into account all of Washington's impairments are also supported by substantial evidence.

## Conclusion

There was no reversible error in the assessment of Washington's application for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and contains no legal error. Washington is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: ___11/13/2009_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Charles Julian Myers
cmyers7943@sbcglobal.net